CLEVELAND (city) v GESELL et

Common Pleas Court, Cuyahoga Co

Decided September 21, 1939

Henry S. Brainard, law director and D. C. Meck, Jr., asst. law director, of Cleveland, for plaintiff.

Clare M. Vrooman, Fred C. Baldwin, and Vernon R. Burt, of Cleveland, for the Cleveland Hospital Service Association.

Charles W. White, assistant director of law, of Cleveland, for various defendants.

William C. Dixon and J. W. Wursthorn, of Cleveland, amici curiae.

## OPINION

By SKEEL, J.

This is an action for a declaratory judgment in which the city of Cleveland seeks a determination by this court as to the validity of its Ordinance No. 1163-39, and further a determination of the extent to which various officers of the city may use the facilities at their disposal of their respective public offi-

cers to carry out the mandates of said ordinance.

The ordinance which was passed by the city council of the city of Cleveland, approved by the Mayor on July 24, 1939, was adopted under the authority of §669-12, GC, as amended by Senate Bill No. 181 of the 93rd General Assembly and becoming effective as of July 12, 1939. §669-12, GC, provides as follows:

"An employee or employees of the state of Ohio or any political subdivision or district of the state of Ohio, or of any institution supported in whole or in part by the state, may authorize the deduction from his or their salaries or wages of the amount of his or their subscription payments to any corporation operating a non-profit hospital service plan as provided in this act. Such authorization by the employees of the state of Ohio shall be evidenced by an approval of the head of the department, division, office or institution, directed to and filed with the auditor of state. The auditor of state shall draw a state warrant or warrants in favor of the hospital service corporation stipulated in such authorization for the amount covering the sum total of the deductions authorized in the pay roll of any department, division, office or institution. The governing body of any political subdivision or district of the state of Ohio or institution supported in whole or in part by the state may authorize deductions from the salaries or wages of employees subscribing to such non-profit hospital service plan."

Ordinance No. 1163-39 provides as follows:

"Ordinance No. 1163-39. An emergency ordinance to amend Section 99-1 of the municipal code of Cleveland of 1924 as enacted by ordinance No. 104,019, passed September 28, 1936.

"Whereas, the 93rd General Assembly of Ohio has enacted into law the provisions of Senate Bill No. 181, relating to non-profit hospital service plan, which

provisions became effective July 12, 1939; and

"Whereas, this ordinance constitutes an emergency in that the same provides for the usual daily operation of a municipal department; now, therefore,

"BE IT ORDAINED BY THE COUNCIL OF THE CITY OF CLEVELAND:

"Section 1. That section 99-1 of the municipal code of Cleveland of 1924, as enacted by ordinance 104019, passed September 28, 1936, be and the same is hereby amended to read as follows:

" 'Section 99-1. The treasurer of the city of Cleveland, pursuant to the authority of §669-12, GC is hereby authorized to deduct from the salaries or wages of employees subscribing to any non-profit hospital service plan, incorporated and operating under the provisions of §699 et seq, GC, such amounts monthly as shall have been stipulated by such employees in written authorization filed with said treasurer requesting such deductions. The treasurer of the city of Cleveland is hereby authorized to make remittance to such non-profit hospital service plans so incorporated and operating of the aggregate amount of sums so authorized to be deducted and to transmit the same to such organizations on the 15th day of the month following the date of such deductions.'

"Section 2. That existing Section 99-1 of the municipal code of Cleveland as enacted by ordinance 104019, passed Sept. 28, 1936, be and the same is hereby repealed.

"Section 3. That this ordinance is hereby declared to be an emergency measure, and, provided it receives the affirmative vote of two-thirds of all the members elected to council, it shall take effect and be in force immediately upon its passage and its approval by the mayor; otherwise it shall take effect and be in force at the earliest period allowed by law. Passed July 24, 1939."

This ordinance was substituted for a former ordinance of the city of Cleveland which was repealed upon the enactment of the above ordinance, and for that reason and for the purpose of clarity it seems advisable to state some of the significant facts and history of this legislation.

The Cleveland Hospital Service Association, one of the defendants in this action is a non-profit corporation originally organized under §669, GC, before it was amended in 1939. The purpose of this association was to provide low cost hospitalization for all persons who are employed and subscribe to its plan. It also insures the participating hospital's payment for services rendered to such subscribers. The plan itself is based upon pay roll deductions made by the employer at employees' direction in connection with employee groups. It is in effect the medium through which by small weekly contributions of its subscribers a fund is created to insure adequate hospitalization to its members in the event of sickness or accident. Contracts are entered into between the individual employees and the service association but the latter extends its service contracts only to employees whose employer will undertake pay roll deductions and make such payments direct to the association. No contract exists between the association and the employer.

The employees of the city of Cleveland have been afforded the opportunity of subscribing to this plan for more than five years under the earlier state law and Cleveland ordinance and to date there are over 5300 employees of the city of Cleveland who have become members of the association. At the last session of the Ohio General Assembly §669, GC, was amended by Senate Bill No. 181, the amendment authorizing the extension of the services of such association as the Cleveland Hospital Service Association and placing such associations under the supervision of the superintendent of insurance. The Cleveland Hospital Service Association has, upon the passing of the amendment qualified itself to do business under the new act. The purpose of Section 1163-39 of the Municipal Ordinances of the city of Cleveland was to conform the then existing city legislation to the provisions of §669-12, GC, as amended but no material change in the methods used

by the officials of the city of Cleveland in carrying out this plan was thereby made necessary.

Heretofore the various accounting and fiscal officers of the city of Cleveland have set up a system of accounts to facilitate the making of deductions authorized by the earlier ordinance, and the treasurer has and is remitting the correct amount of money so deducted each month on behalf of its employe-subscribers to the Cleveland Hospital Service Association. It is significant that these deductions and remittances are made only in cases where the employees request and authorize such deductions in writing. The money forwarded to the association is not public money, but is money of the employees having been deducted from their salaries or wages.

The evidence presented at the hearing of this case shows that certain employees who work on the pay rolls of the city are required to spend a few hours in each pay roll period to make pay roll deductions including those required by the Hospital Service Association contracts.

While some time of the city's employees is thus partially spent in making these pay roll deductions, the evidence clearly establishes that the number of employees preparing the pay rolls for city employees could not be reduced if the deductions made for the Cleveland Hospital Service Association were terminated. The evidence also clearly establishes that since the time that deductions have been made for employees requesting the benefit of the Hospital Service Association the making of such deductions has not required the employment of any additional help for the city of Cleveland.

It is claimed on behalf of the opponents of the plan that §669-12, GC, is unconstitutional because in carrying out its provisions it is necessary to expend public funds in the interests of the Hospital Service Association, a non-profit private corporation. But such is not the fact. §669-12, GC, provides for the rendering of a service to the employees of the city of Cleveland just the same as would be true if the city, in part supported a group insurance plan which is contributed to by any number of employees of the city.

As has been pointed out, the employees of the city who desire to take advantage of the plan of the Cleveland Hospital Service Association make a written request to the proper officers of the city to deduct certain sums from their salaries or wages, and to forward such amounts each month to the Cleveland Hospital Service Association. The ordinance above referred to gives to the city of Cleveland the authority to grant such employees' requests, and to furnish them this service, when they become members of a hospital service association as provided for by §669-12, GC. The sole beneficiaries of the acts performed by the employees of the city of Cleveland as authorized by this legislation are for the employees of the city. If here is any cost to the city in performing this service it is incidental to and n the nature of additional compensation to such employees.

In Ohio as in other jurisdictions it is a well recognized principle of law that courts will not interfere with the discretion of the Legislature as to its legislative policies unless there has been a gross abuse of such discretion and unless public funds are being spent for purposes or objects which have no relation to the public interest.

In Dogett v Colgan, 92 Cal. 53 (quoted in 16 N. P. (N.S.) at page 475), the court said:

"What is for the public good and what are public purposes are questions which the legislature must decide upon its own judgment in respect to which it is vested with a large discretion which can not be controlled by the courts except perhaps when its action is clearly evasive."

It is the unquestioned law of this state that expenditure of public funds may be made of a nature similar to that provided for by the statute and ordinance here under consideration.

"Contributing to a state teachers' retirement fund is a proper expenditure of money for a school purpose. Such a retirement system increases the morale and tends to raise the standard of the teaching force." **State ex rel v Kurtz, 110 Oh St 332.**

In the recent case of **Thompson v City of Marion, 134 Oh St 122, 11 OO 549,** the court upheld the establishment of the pension system for municipal officers and employees. The third paragraph of the syllabus holds:

"3. The establishment of a pension system for municipal officers and employees, whereby, after serving a certain number of years or upon disablement from injuries received in the course of their duties, they are retired from active service and paid a certain proportion of their salaries for the remainder of their lives, is not an unconstitutional disposition of public moneys for private use when applied to officers and employees who have entered or continued in the service after the system went into effect."

Public expenditures for police and firemen's relief funds, teachers' pensions and many similar types of expenditures have been approved in Ohio.

In other jurisdictions courts have permitted public authorities to go much further for the benefit of their employees than the step here contemplated by the council of the city of Cleveland.

In Thompson v Memphis, 251 S. W. 46; 27 A. L. R., 1257, (Tenn.) the council had authorized the city treasurer to enter into a contract for group life insurance upon the lives of the employees in the water department and the premium for such policy was ordered to be paid from the funds of the city. In deciding that such expenditures were proper the court said:

"It could hardly be contended but that the governing powers would have the right to increase the annual wages of each employee of the water department $18.00 per annum if justified by existing conditions. This, in effect, is what it did when it took out said policy of group insurance, but from an economic basis it concluded that better results would be obtained as to both parties by investing it in insurance instead of paying the money to the employee. Ordinarily, what can be done indirectly can be done directly. If a city can increase the wages of its employees, why not invest the increase in insurance for them, instead of paying it to them direct, if, by so doing, they are better satisfied and the city obtains better service?"

This case goes much further in allowing the expenditure of public funds for public employees than the present ordinance, for in our case the premiums or charges of the Cleveland Hospital Service Association are in no part paid out of public funds but are paid at the request of employees from moneys deducted from their pay rolls and the only detriment suffered by the city of Cleveland is the actual time which its pay roll clerks or officials spend in making the deductions.

The court therefore finds that if any moneys are spent by the city of Cleveland in performing the mandates of this ordinance, that such moneys are spent for public purposes and for the exclusive benefit of its employees. §669-12, GC, which authorizes municipalities to pass ordinances such as 1163-39 of the city of Cleveland is therefore a valid exercise of the power vested in the Legislature by the Constitution of the state of Ohio.

There is but one remaining question which involves the authority of the city council of the city of Cleveland to pass ordinance 1163-39 of the Municipal Ordinances of the city of Cleveland. Section 1 of the charter of the city of Cleveland provides in part:—

"Sec. 1. The inhabitants of the city of Cleveland * * * shall be a body politic and corporate by name the city of

Cleveland, and as such shall have perpetual succession; * * * may create, establish, abolish and organize offices and fix salaries and compensations of all officers and employees; * * * may pass such ordinances as may be expedient for maintaining and promoting the peace, good government and welfare of the city and the performance of the functions thereof."

Section 2 of the charter of the city of Cleveland provides:

"Sec. 2. The enumeration of particular powers by this Charter shall not be held or deemed to be exclusive, but, in addition to the powers enumerated herein, implied thereby or appropriate to the exercise thereof, the city shall have, and may exercise all other powers which, under the constitution and laws of Ohio, it would be competent for this charter specifically to enumerate."

Section 24 of the charter of the city of Cleveland provides in part:

"Sec. 24. The legislative powers of the city, except as reserved to the people by this Charter, shall be vested in the council * * *."

The court has already found that this legislation is for the exclusive benefit of the employees of the city of Cleveland, and that Sections 1, 2 and 24 of the charter of the city of Cleveland authorize and empower the passage of this type of ordinance.

Even though there were no charter provisions such as have been quoted above, nevertheless §669-12, GC, which we have also found to be a valid statute would, in this court's opinion, enable and empower the city of Cleveland to pass ordinance 1163-39.

For the reasons above stated, this court holds that §669-12, GC, and ordinance 1163-39 are both valid exercises of legislative power and since the machinery set up by the officers of the city of Cleveland in furtherance of the mandates of this ordinance is in conformity therewith, we further hold that the method followed by the city of Cleveland with regard to its employees who have subscribed to the plan of The Cleveland Hospital Service Association is in all respects correct and proper.